Scott, Chief Judge.
The executions under which the constable sold the property in this case were issued for the satisfaction of judgments which had been properly rendered, so far as appears not against the plaintiffs below or either of them, but against the canal-boat “ Hackberry.” So far as we know, Ward and his wife' were both strangers to the *519 judgments and to the writs of execution, being wholly unnamed in either.
Neither of them being defendants in execution, and the boat having been seized, not for the satisfaction of 'their debt, but of its own, we are strongly inclined to think that for this reason, the constable was not bound to inquire as to the ownership of the boat, and that the case was one in which the statutory rights of heads of families to hold property exempt from sale on execution can have no application.
The statutory provisions which exempt personal property from sale on execution, when the debtor has no homestead, are all intended for the benefit of the debtor and his family. But in this case the debtor was the canal-boat “ Hackberry,” and not "Ward or his wife.
But if we are mistaken in this view of the case, still, upon well settled principles, we think the judgment of the court below can not be sustained.
“ The owner of chattel property which is exempted by law from execution and sale for the payment of debts, is not divested of the right of disposing of it by pledge-in security for the payment of his debts; and in case of a pledge or chattel mortgage, the owner clearly waives the benefit of exemption so far as the incumbrance extends or is operative.” Frost v. Shaw, 3 Ohio St. 270.
By the first section of the watercraft law of this state, as amended March 10, 1860 (57 Ohio L. 32), steamboats and other watercrafts of twenty tons burden and upward, are declared liable for all debts contracted on account thereof by the master, owner, steward, consignee, or other agent, for materials, supplies, or labor in the building, repairing, furnishing, or equipping the same, and on various other specified accounts; and such liability is declared to be a lien on the craft. "When a liability is thus created by the voluntary act of the owner or his agent, he by the same act creates a lien on his vessel, its apparel and furniture, which is co-eval and co-existent with the liability. Against such a lien, we think it clear that the owner can no more claim the benefit of exemption from execution than he can *520 against his own chattel mortgage. Indeed, the lien given by the watercraft law has been held .to be superior to that of a mortgage. Kellogg v. Brennan, 14 Ohio, 72; Provost v. Wilcox, 17 Ib. 359. When such lien has attached, the owner thenceforward holds the property subject thereto, and even a purchaser from him takes the property in general subject to the lien. 7 Ohio St. 478
It is not the policy of any of the exemption statutes of this state,to enable a debtor to hold personal property free from liens created by his own voluntary act.
And that such liens should be equally obligatory as against his wife, is but the necessary result of his full powér of disposing of such property.
By their demand made upon the constable,the plaintiffs below sought to convert their qualified ownership in the “ Hackben-y ” into an absolute one, and wholly to withdraw their vessel with its apparel and furniture from the conditions to which the law of the land had subjected its business opei’ations. The constable was guilty of no breach of duty in ignoring such a claim.
The. court below rendered a judgment against plaintiffs in error for the value of all the property sold by the constable. In this we think the court erred. Whether a recovery might not have been properly had for the value of the horses alone, or whether they are to be regarded as part of the apparel or furniture of the boat, are questions not presented by counsel, and upon which, therefore, we express no opinion.

Judgment reversed.

Day, Wright, Johnson, and Ashburn, JJ., concurred.